**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| **CHRISTOPHER REY GONZALES,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:22-cv-062-O-BP |
| § | |
| **COMMISSIONER OF** § | |
| **SOCIAL SECURITY,** § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Christopher Rey Gonzales ("Gonzales") applied for Supplemental Security Income ("SSI") under the Social Security Act ("SSA"). The Commissioner denied his application, deciding that he was not disabled. Gonzales appealed. After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this case with prejudice.

**I.    BACKGROUND**

Gonzales seeks disability benefits under Title XVI of the SSA, claiming disability since January 17, 2020. Soc. Sec. Admin. R. [hereinafter "Tr."], ECF No. 11-1 at 15. Gonzales's SSI application specified several medical conditions that limit his ability to work, including epilepsy, asthma, borderline intellectual functioning, major depressive disorder, ADHD, and cognitive disorder. Tr. 17. The Commissioner denied his application initially and upon reconsideration. Tr. 104, 113.

Gonzales challenged the Commissioner's denial before an Administrative Law Judge ("ALJ") who conducted a telephonic hearing and later affirmed the Commissioner's denial. Tr. 12. After the Social Security Appeals Council denied Gonzales further administrative review (*id.* at 1), he filed this civil action seeking judicial review under 42 U.S.C. § 416(g). ECF No. 1; *see also Higginbotham v. Barnhart,* 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."). He claims that he is disabled and thus entitled to SSI. ECF No. 1.

## II. STANDARD OF REVIEW

Title XVI of the SSA governs the SSI program. *See* 42 U.S.C. §§ 1381-1383f. Claimants seeking benefits must prove that they are "disabled" within the meaning of the SSA. *See Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988) (stating the "relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for [SSI]"). A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 416.920(a).

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 416.920(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 416.972. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 416.920(a)(4)(ii). Third, disability exists if the

impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* § 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1).

Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers his past relevant work ("PRW"). *See id.* § 416.920(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [his] limitations." *Id.* § 416.945(a)(1). PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 416.960(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his PRW considering his RFC. *Id.* § 416.920(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 416.920(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis*, 837 F.2d at 1382 ("Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion."); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v.*

*Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris,* 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III. ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process here. *See* Tr. 17-25. First, the ALJ found that Gonzales has not engaged in substantial gainful activity since August 4, 2020. *Id.* at 17. Second, he found six medically determinable impairments: epilepsy, asthma, borderline intellectual functioning, major depressive disorder, ADHD, and cognitive disorder. *Id.* Third, he did not identify any impairments or combination of impairments that qualify under the federal regulatory list. *Id.* at 17-18. He then assessed Gonzales's RFC in relevant part:

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform medium work as defined in 20 C.F.R. 416.967(c).... The claimant can understand, remember, and carry out simple, routine, and repetitive talks. The claimant can relate to supervisors and co-workers on a superficial work basis. The claimant can have occasional contact with the general public. The claimant can adapt to a work environment. The claimant can deal with no more than occasional changes in work processes and environment.

*Id.* at 20. Using this RFC determination and after hearing testimony from a vocational expert ("VE"), the ALJ determined at step four that Gonzales did not have any PRV. *Id.* at 24. Finally, at step five, after finding that Gonzales's age, education, work experience, and RFC with additional

4

limitations allowed him to perform the requirements of other jobs, the ALJ then found Gonzales "not disabled" under Medical-Vocational Rule 201.20 and Rule 201.11. Tr. 25.

Gonzales urges reversal because: (A) substantial evidence in the record did not support the ALJ's finding on Gonzales's limitation in social functioning, and (B) the ALJ did not properly articulate the persuasiveness of the medical opinions in the record. ECF No. 13 at 9-20.

### A. Substantial evidence in the record supports the ALJ's finding on Gonzales's limitation in social functioning.

Gonzales argues that substantial evidence did not support the ALJ's RFC determination. ECF No. 13 at 13. He argues that the ALJ erred by "failing to build a logical bridge" between the evidence Dr. Hart and Gonzales's guardian provided suggesting pure self-isolation with only limited family interaction and the ALJ's assessments that Gonzales could in fact interact with others in a work setting. *Id.* at 14. The Commissioner responds that the ALJ properly conducted his analysis by considering the evidentiary record as a whole, including assessments from the State Agency Medical Consultants ("SAMC"). ECF No. 14 at 3-4.

"The responsibility for determining a claimant's RFC lies with the ALJ ... [who] must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence." *Ewing v. Colvin*, No. 4:13-CV-085-A, 2014 WL 2464765, at *4 (N.D. Tex. June 2, 2014) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990); SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). Moreover, "[t]he ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record." *Id.* at *4 (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). Instead, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations) ...." SSR 96-8p, 1996 WL 374184 at *7.

The ALJ explained his conclusion regarding Gonzales's ability to work, citing medical evidence from the SAMCs and Gonzales's various physicians, and discussing how that evidence factored into his analysis of Gonzales's RFC. Tr. 21-23. The ALJ also noted from Gonzales's guardian that he was "able to use [a] phone to text friends, takes care of his dog… was shown to have a stable mood, and when taking medication, he had [an] increase in motivation." *Id* at 23. The ALJ concluded that "the record establishes some degree of limitation, but not to the extent alleged." *Id.* In light of his findings, the ALJ found Gonzales capable of work, but suggested social interaction limitations. *Id.* at 20.

Considering the ALJ's explanation, it is clear that substantial evidence supported the ALJ's RFC determination. The SAMC's findings show that Gonzales could "understand, remember, and carry out simple instructions, make simple decisions, concentrate for extended period of times, interact with others, and respond to changes." *Id.* at 74. On reconsideration the SAMC noted that Gonzales was "able to present with an appropriate appearance, cooperate, carry on a normal conversation, get along with others at home, in public, and at work despite occasional problems with social interaction." *Id.* at 94. The medical records also routinely confirmed, among other things, that Gonzales's medicine helped him, that he was making progress, was more motivated, and interacted with nurses, family members, and others when needed. *Id.* at 322, 345, 390-93, 420, 422-23, 452, 453, 493-94, 499-500, 517-518, 522, 529, 532, 555, 565. While Gonzales argues that other medical evidence in the record contradicted the evidence that the ALJ cited, this argument is unpersuasive. ECF No. 13 at 14-15. Gonzales's "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Caldwell v. Colvin*, No. 4:15-cv-00576-O-BL, 2016 WL 3621097, at *3 (N.D. Tex. June 10, 2016), *rec. adopted*, 2016 WL 3523780 (N.D. Tex. June 28, 2016).

In all but the rarest cases of exceptional evidentiary clarity, a certain amount of medical evidence will always exist that could theoretically support a different RFC determination. Modern SSI applications and appeals involve voluminous evidentiary records, which is why "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Brown*, 192 F.3d at 496 (quoting *Selders*, 914 F.2d at 617). The Court's job is not to reweigh the evidence nor second guess the Commissioner, but only to ensure that substantial evidence supported his decision. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. The Court finds that substantial evidence supported the ALJ's determination in Gonzales's case. Moreover, although Gonzales does not agree with the ALJ's limitations stated in the RFC, the ALJ considered the entire record and reached a conclusion grounded in substantial evidence. *See, e.g.*, ECF No. 11-1 at 20-23. Thus, substantial evidence supports his determination that Gonzales could relate to supervisors and co-workers on a superficial basis, and reversal is not warranted on this ground.

### B.    The ALJ properly considered Dr. Hart's medical opinion and articulated why it was unpersuasive.

An ALJ has broad discretion to resolve conflicts in the evidence without a court second-guessing him. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)). An ALJ is free to reject any medical opinion when the evidence supports a contrary conclusion. *See generally Harris*, 209 F.3d at 417; *Bradley* v. *Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). An ALJ may even completely disregard a treating physician's opinion. *See Brown,* 192 F.3d at 500.

Regardless of whether an ALJ accepts or rejects a medical opinion, the ALJ must "articulate in his determination or decision how persuasive he find[s] all of the medical opinions ... in [a claimant's] case record." 20 C.F.R. § 404.1520c(b); *Guy v. Comm'r of Soc. Sec.*, No. 4:20-CV-01122-O-BP, 2022 WL 1008039, at *3 (N.D. Tex. Mar. 14, 2022), *rec. adopted* 2022 WL 1004241 (N.D. Tex. Apr. 4, 2022). While ALJs need not exhaustively recount their reasoning, they

must "explain how [they] considered the supportability and consistency factors for ... medical opinions ... in [a claimant's] determination or decision." 20 C.F.R. § 416.920c(b)(2); *Guy*, 2020 WL 1008039, at *3. This requirement is obligatory for claims filed on or after March 27, 2017. *Id.* Gonzales applied for SSI on August 4, 2020, and is, therefore, entitled to the explanation.

Gonzales claims that the ALJ failed to comment on the persuasiveness of Dr. Hart's medical opinion. ECF No. 13 at 15. Dr. Hart was Gonzales's treating physician, but her opinion is not the last word on Gonzales's disability status. The opinions of treating physicians are not conclusive. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (citing *Greenspan*, 38 F.3d at 237). The law permits an ALJ to discount evidence for good cause. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000). Gonzales claims that the ALJ did not show good cause to disregard Dr. Hart's opinion and did not discuss in any detail why he found it unpersuasive. ECF No. 13 at 15. Gonzales then alleges that the ALJ's failure to explain why he found Dr. Hart's opinions to be less than persuasive was harmful error. *Id*. at 21. The Commissioner argues that the ALJ properly articulated and discussed why Dr. Hart's opinion was not persuasive, based on objective evidence in the record. ECF No. 14 at 5-10.

ALJs must "explain how [they] considered the supportability and consistency factors for . . . medical opinions . . . in [a claimant's] determination or decision." *Guy*, 2022 WL 1008039, at *3. Mere evidentiary summaries fall short of § 416.920c's requirements, as the plain meaning of the regulatory text shows. *Id*. Determining supportability and consistency involve different

analyses and "require the ALJ to explain [her] reasoning for [her] persuasiveness finding with respect to each factor." *Heleodoro C. v. Commissioner, Social Security Administration*, No. 3:20-CV-3520-E-BK, 2022 WL 4359148, at *3 (N.D. Tex. July 20, 2022), *rec. adopted* 2022 WL 4360555 (N.D. Tex. Sept. 19, 2022) (quoting *Kilby v. Kijakazi*, No. 4:20-CV-03035, 2022 WL 1797043, at *3 (S.D. Tex. Mar. 15, 2022)). While "supportability" measures the degree of relatedness between a medical provider's opinion and the medical evidence she provides to support that opinion, "consistency" is "an all-encompassing inquiry" that focuses on "how well a medical source is supported, or not supported, by the entire record." *Id*; *See* 20 C.F.R. §§ 416.920c(c)(1), 416.920c(c)(2).

In his decision, the ALJ explained why he found Dr. Hart's testimony to be unpersuasive, as follows:

> The medical opinion at exhibit B9F, page 3 and following is not persuasive as it is not supported by medical evidence. As stated above, while taking his medication, the claimant was repeatedly noted to be making good progress with a stable mood and increase in motivation and no feelings of depression.

Tr. 24. The "as stated above" section to which the ALJ referred included three pages in his decision discussing the objective medical records that are consistent with his opinion. *Id.* at 21-24. Although providers diagnosed Gonzales with depression and ADHD, along with borderline intellectual functioning, the medical reports confirm that while he was on his medication, his "depression [was] under control." *Id.* at 22. Providers' notes recorded between April 2020 and January 2021 reported that he was making fair progress and had more motivation. *Id.* Multiple reports stated that his mood was stable, that he had no feelings of depression, and that he was "using coping skills that work and remains engaged in the recovery process." *Id.* at 23. Finally, Gonzales told his providers that while on his medication he was "getting up out of bed, watching TV, playing video

games and spending time with his family." *Id.* Moreover, "all [his] needs [were] being met at this time." *Id.*

The ALJ's explanation of his conclusion meets the supportability and consistency requirements, even though he did not state it in a single paragraph labeled "persuasiveness." The court views the ALJ's decision in its entirety. *See Hubbard v. Comm'r of Soc. Sec.* No. 4:20-cv-00588-BP, WL 196297, at *4 (N.D. Tex. Jan. 21, 2022) (ALJ's discussion was sufficient when taken in the context of the entire RFC discussion preceding it); *Tischler v. Kijakazi,* No. 4:20-cv-0721-P, 2021 WL 5832843, at *3 (N.D. Tex. Dec. 9, 2021). The entire record of providers' notes does not support Dr. Hart's final opinion that "claimant frequently has symptoms severe enough to interfere with attention and concentration… and that he would have difficulty working at a regular fulltime job on a sustained basis due to psychological limitations, paralyzing fear and anxiety." Tr. 21-24. Further, Dr. Hart's report was incomplete in not including her examination findings, diagnoses, and prescribed course of treatment. ECF No 13 at 20. The ALJ did note the report of Gonzales's guardian, Isabel Diaz, which discussed Gonzales's fears, anxiety, and desire to be alone in his room. Tr. 21. The ALJ explained why he did not find Dr. Hart's opinion persuasive, and the evidence he references in the record supports that conclusion. This point does not require reversal.

Even if the ALJ did not properly consider Dr. Hart's medical opinion, the Court need not reverse the ALJ's decision because Gonzales did not meet his burden to show harmful error. The harmless error doctrine provides that "[p]rocedural perfection in administrative proceedings is not required," and a court "will not vacate a judgment unless the substantial rights of a party are affected." *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). To prevail on this point, Gonzales must show the ALJ's failure to explain his consideration of Dr. Hart's opinion prejudiced

him. In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *Davidson v. Colvin*, 164 F. Supp. 3d 926, 944 (N.D. Tex. Sept. 30, 2015).

The ALJ's decision shows that he recognized Dr. Hart's medical opinion because he mentioned it. Tr. 23. The ALJ also noted the limitations present in her clinical findings. *Id.* Gonzales argues that had the ALJ properly considered Dr. Hart's medical opinion, he may have reached a different decision. ECF No. 13 at 21. He contends that a different interpretation of the medical records would have led to a different answer to one of the hypotheticals that the VE provided during his testimony. *Id.* at 23. The Commissioner argues that the ALJ need not rely on the VE's response based upon evidentiary assumptions that the ALJ ultimately rejected. *Owens v. Heckler,* 770 F.2d 1276, 1282 (5th Cir. 1985).

The Court concludes from this evidence that the ALJ considered Dr. Hart's opinion, and even if he had failed to properly articulate the persuasiveness of that opinion, Gonzales did not show that if the ALJ had provided further explanation, then he would have adopted her opinion. *Miller v. Kijakazi,* No. 22-60541 (5th Cir. January 18, 2023). Gonzales invites the Court to reweigh the evidence and conclude that the ALJ's alleged failure harmed him. This is not in the Court's purview. *See Garcia v. Berryhill,* 880 F.3d 700, 704 (5th Cir. 2018). Accordingly, Gonzales has not met his burden to show harmful error, and the Court should not reverse on this point.

## IV.   CONCLUSION

Because substantial evidence in the record supported the ALJ's decision, and the ALJ properly explained the persuasiveness of Dr. Hart's medical opinion, the Court should **AFFIRM** the Commissioner's decision and **DISMISS** this case with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on January 30, 2023.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE